IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. CALVIN LOUIS HILL

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15728    Charles Lee, Judge**

————————

**No. M2004-00597-CCA-R3-CD - Filed March 8, 2005**

————————

A Marshall County jury convicted the Defendant, Calvin Louis Hill, of carjacking, theft of property valued over $1000.00, and three counts of forgery. The trial court sentenced the Defendant, as a Range II offender, to an effective sentence of eighteen years. On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions for carjacking and forgery; and (2) his sentence was excessive. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined, and THOMAS T. WOODALL, J., concurred in result only.

Gregory D. Smith (on appeal), Clarksville, Tennessee, and Michael J. Collins (at trial and on appeal), Shelbyville, Tennessee, for the appellant, Calvin Louis Hill.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William Michael McCown, District Attorney General; Weakely E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from crimes committed against Maysene Henson that occurred in Marshall County on May 29, 2003. A jury convicted the Defendant of carjacking, theft of property valued over $1000.00, and three counts of forgery. The trial court merged the carjacking and theft of property convictions and sentenced the Defendant, as a Range II offender, to eighteen years in prison. The trial court also merged all three forgery convictions and sentenced the Defendant, again as a Range II offender, to four years in prison, to run concurrently with his other sentence.

## A. Facts Presented at Trial

The following evidence was presented at the Defendant's trial: Maysene Henson testified that, on May 29, 2003, she had a checking account at First Farmers & Merchants Bank. She said that she had a checkbook for that account that she kept in a purse in her car. Henson testified that, on May 29, 2003, she was driving her 1992 Chrysler New Yorker, worth between $1200.00 and $1500.00, attempting to find cardboard boxes in order to help her son move some items. She said that she went to Tietgens Super Rama Market ("Market") around 1 p.m. to look for boxes, and she pulled off the side of the road behind the store. Henson said that she left her car running when she got out of her car and gathered some boxes, and, as she was getting into her car, she was "shoved" aside by someone behind her. She said that, after she was pushed out of the way, someone got into her car, slammed the door, and drove away "real, real fast." Henson said that she suffered bruises as a result of being pushed away from her car. She identified the person who took her car as a "black slender male with short hair," and she said he was "about 5'5" tall." Henson said that her purse and billfold, which contained her checkbook and $1.60 in cash, were in her car when it was taken.

Henson testified that, shortly after the car was taken, a man she knew named Tommy Allen stopped his car at a nearby stop sign and asked her what had happened. She told him that her car had been taken, and he followed her car through the Market's parking lot and out of her sight. Henson testified that the Market's manager called the police. Henson testified that, shortly after the car was taken, she received a call from an employee of her bank named Shannon Barker inquiring about some checks, and she told Barker what had happened and not to cash any checks on her account. She said that the police located her car, and, when they returned it to her the following day, the front seat was "a little messy." Henson said that when her billfold was returned to her there was $1.60 in cash and six checks, numbers 1434 to 1439, missing. One of the checks, number 1434, was "wadded up," laying on the floor of her car. She said that check number 1439 was filled out, dated May 29, 2003, and made payable to "Calvin Hill" in the amount of $230.00. The check stated that it was "for car work." Henson said that she did not fill out or sign this check, and she did not know anyone named Calvin Hill prior to this incident. Further, she did not owe anyone named Calvin Hill any money for car work. Henson testified that, on the back of the check was Calvin L. Hill's signature, and she said that the Defendant's name was Calvin L. Hill. On cross-examination, Henson testified that she never saw the man who took her car.

Tommy Allen testified that on May 29, 2003, he was near the Market around 1:00 p.m., and he saw Henson, whom he had known for approximately thirty years. He said that he was in his car, stopped at a stop sign, when he noticed Henson and "a black guy" near the dumpster where the Market kept their discarded cardboard boxes. As Henson looked like she was getting into her car, he noticed the man "shove" her "back a little bit" and jump into her car and drive away. He said that Henson called to him and said "Tommy, follow that car and bring my car back." Allen testified that he followed the car for some distance, but then he lost sight of the car. He said that he then went back to the Market where the police were waiting for him. On cross-examination, Allen testified that he was approximately twelve to fifteen feet away from Henson when the man pushed her, and he was unable to identify the man because he never saw his face.

Barry Hargrove, a sergeant with the City of Lewisburg Police Department, testified that he located a car belonging to Henson on May 29, 2003, at around 2:50 p.m., after looking for it for approximately one hour. He said that, when he located the car, which was approximately one mile from the Market, the front passenger seat was in "disarray," and the keys were on the floorboard.

Daryl Birdsong, an officer with the City of Lewisburg Police Department, testified that on May 29, 2003, he responded to a call about a carjacking behind the Market at around 1:02 p.m. He said that he interviewed both Henson and Allen and alerted police to watch for Henson's car. He said that later that same day, at around 2:30 p.m., he responded to a call at the First Farmers & Merchants Bank, where he arrested the Defendant. Mike Nance, an officer with the City of Lewisburg Police Department, testified that, on May 29, 2003, he responded to a call at the First Farmers & Merchants Bank, and he assisted in the Defendant's arrest.

Shannon Barker testified that she was an employee of First Farmers & Merchants National Bank on May 29, 2003, where she was working as a teller at around 1:30 p.m., when the Defendant came to cash a check on Maysene Henson's account. Barker testified that the legal line of the check contained misspellings and was not written out correctly, so she told the Defendant that she could not cash this check. She said that, a couple of minutes later, the Defendant came to her teller station again with a different check attempting to cash it on Henson's account. She said that the check was still not written out properly. Barker testified that, at this time, she began thinking that something was wrong, so she attempted unsuccessfully to call Henson while the Defendant was standing there. She told the Defendant that she could not cash his check, and he left. Barker said that, because she still suspected that something was "amiss," she again called Henson, and, after reaching her, she learned about the circumstances leading up to the Defendant's arrival at the bank. She said that she then called and emailed the other branches of her bank to tell them not to cash any checks on Henson's account, and she told them to watch for a black male attempting to cash a check on this account. Barker identified the bank surveillance videotape recording, which showed the Defendant entering the bank, standing at her teller station, leaving, and then returning a short time later. Barker testified that check number 1439, which was admitted into evidence, was not the same as either of the checks that the Defendant presented to her. On cross-examination, Barker testified that she never saw who filled out these checks, and she could not be sure that the Defendant filled out the checks.

Shirley Bledsoe, an employee with First Farmers & Merchants Bank who works at a different branch from Barker, testified that she was working as a teller on May 29, 2003, when, at around 2:30 p.m., she received information from Barker to watch for a black male attempting to cash a check on Henson's account. She said that, a short time later, the Defendant came in and attempted to cash check number 1439, which was written out correctly in the amount of $230.00, on Henson's account. Bledsoe said that, at that time, she did not assume that the Defendant was the man who took Henson's checks, and she handed the check to her supervisor and told the Defendant that her supervisor would have to call Henson. Bledsoe testified that, during this time, another employee was calling the police, and the Defendant stood at her teller station until the police arrived and placed him under arrest. Bledsoe identified the bank's surveillance videotape recording that showed the Defendant entering the bank and coming to her teller station. On cross-examination, Bledsoe

testified that she did not see who filled out the check that the Defendant attempted to cash.

Danny Kirbo, a corrections officer at the Marshall County Jail, testified that he took the Defendant's palm prints on May 30, 2003, at Detective Whitsett's request, and those prints were admitted into evidence. Don Lombardy, a corrections officer with the Marshall County Sheriff's Office, testified that he took the Defendant's fingerprints. On cross-examination, both officers testified that it was standard procedure for them to take the prints, but they did not know why the prints were requested.

James Whitsett, a detective with the Lewisburg City Police Department, testified that, as part of his investigations, he has been trained to, and does "lift" fingerprints from items. The detective testified that he was advised where Henson's car was located, and, after the car was taken to the police station, he photographed the car, "lifted" fingerprints, and looked for other evidence in the car. The detective said that he attempted, but was unable, to obtain fingerprints from Henson's car. Detective Whisett testified that he found Henson's billfold in her car, and he processed it for fingerprints. He said that he found fingerprints on the checkbook register, the checkbook cover, and check number 1434, which was on the floor of the car, and on the car itself. Detective Whitsett said that he found some prints that were too large to be fingerprints on some of these items, so he asked Officer Kirbo to take the Defendant's palm prints. The detective sent the fingerprints found in the car, along with the Defendant's fingerprints, to the Tennessee Bureau of Investigation ("TBI") crime lab for analysis. On cross-examination, the detective testified that he did not send Henson's fingerprints to the TBI crime lab to be compared to those fingerprints he found on the items in her car.

David Hoover, a fingerprint examination expert with the TBI, testified that he was only able to find one identifiable fingerprint from all of the items sent by Detective Whitsett. He said that he identified the Defendant's fingerprint on check number 1434, and he identified the Defendant's left palm print on the checkbook cover. On cross-examination, Agent Hoover testified that he did not find any other fingerprints on the checkbook cover, other than the palm print.

The Defendant testified that on May 29, 2003, at around 1:00 p.m. he was at his apartment. He said that he was sitting in front of his apartment, waiting for his mailman to deliver his unemployment check, when a friend came down the street. He said that his friend presented a check to him for $230.00 and told him that, if he could get it cashed, he would get $200.00 and his friend would keep $30.00. The Defendant admitted, "I am guilty of trying to pass a forged instrument," but denied that he "carjacked a woman." The Defendant reiterated that he was not at the Market on the day of this incident.

On cross-examination, the Defendant said that his apartment was a thirty-five to forty minute walk from the Market, and he said that he did not own or have access to a car. The Defendant conceded that the videotape recording from the bank showed him entering the bank at 1:27 p.m. He said that he and the man who presented him with the check walked to the bank together, but the other man did not enter the bank with him, and, therefore, the other man was not on the bank's videotape

recording. The Defendant testified that the check for $230.00 was the only check that he had ever seen, so Barker must have been mistaken when she testified that he attempted to cash two other checks. The Defendant testified that he had never seen the man who presented him with the check prior to this incident, but he was a "black man." He said that he attempted to give a description of this man to the detective, but the detective was angry and would not allow him to provide a description. The Defendant said that he was 5'5" tall, which matched Henson's description of him. The Defendant said that, when the man approached him with the check, all he saw was the check, he never saw the checkbook or the checkbook register, and he said that he never touched either of them. The Defendant asserted that the police planted his palm print on the checkbook register. The Defendant conceded that, when he was arrested he had a folded one dollar bill and eighty-four cents in his pockets. He said that he remembered Henson testifying that she had a folded one dollar bill and two quarters in her billfold when her car was taken.

Based upon this evidence, the jury convicted the Defendant of carjacking, theft of property valued over $1000.00, and forgery.

## B. Facts Presented at Sentencing Hearing

At the sentencing hearing, the Defendant's presentence report was admitted into evidence. The State noted that it was seeking to enhance the Defendant's sentence based upon two prior felony convictions for the sale of cocaine. Further, the State asserted that the Defendant was convicted for one of these felony convictions while he was on probation for the other felony conviction, and his probation was, therefore, revoked as indicated by the judgment form. Beth Ladner, a probation and parole officer, testified that she prepared the Defendant's presentence report. She said that she ran the Defendant's criminal history and she noted that, in addition to his prior convictions, his probation had been revoked on two different occasions.

The Defendant testified that he previously worked for "ICP, Intercity" for approximately one year, and his last day of work was December 28, 2002. He said that, prior to that, he worked for Sav-A-Lot food store starting in January of 2001. The Defendant testified that, immediately preceding his incarceration for this offense, he worked for Fancy Free Farms, which was not reflected in his presentence report. The Defendant said that he felt remorse for passing a forged check, but he insinuated that the only reason that he forged the check was because the Lewisburg Police detectives were illegally taking money from him. The Defendant said that he was innocent of the carjacking charge. He asserted that the State did not prove at trial that he intentionally and knowingly used force to take Henson's car. He asked the court to consider his remorse for passing the forged check. On cross-examination, the Defendant again asserted that the police planted his palm print on Henson's checkbook register, and said that the TBI agent gave false testimony. He said that the police wrongfully took $230.00 from him. The Defendant testified that, prior to this incident, he had lived in multiple motels, and he had asked local churches to help him pay his motel bills.

On redirect examination, the Defendant testified that he was in the military for five years, and he was honorably discharged.

Based upon this evidence the trial court, after merging the theft conviction with the carjacking conviction and merging the three forgery convictions, sentenced the Defendant to eighteen years in prison.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence was insufficient to sustain his convictions for carjacking and forgery; and (2) his sentence was excessive.

### A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). This Court may not substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction may be based entirely on circumstantial evidence where the facts are "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (quoting State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). The jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958) (citations omitted). While single facts, considered alone, may count for little weight, when all of the facts and circumstances are taken together, they can point the finger of guilt at the Defendant beyond a reasonable doubt. State v. Williams, 657

S.W.2d 405, 410 (Tenn. 1983). Further, "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable, 203 Tenn. 440, 313 S.W.2d at 457; see also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

### 1. Carjacking

The Defendant contends that the evidence is insufficient to support his conviction for carjacking because no one saw the face of the man who carjacked Henson and the Defendant's fingerprints were not found inside Henson's car. Carjacking is "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . force or intimidation." Tenn. Code Ann. § 39-13-404(2) (2003). We conclude that the circumstantial evidence presented in this case is sufficient to sustain the Defendant's carjacking conviction. Henson testified that a 5'5" "black male" pushed her away from her car, leaving her bruised, and then jumped in her car and drove away. A short time later, the Defendant attempted to cash three separate checks from Henson's checkbook at two different bank branches. The Defendant's palm print was found on Henson's checkbook register, which was located inside her car at the time of the Defendant's arrest. The Defendant contended that a friend gave him the check that he attempted to cash, that the bank teller was mistaken, and that the police must have planted his palm print on the checkbook register. The jury rejected the Defendant's assertions. The circumstantial evidence, viewed in the light most favorable to the State, is sufficient to sustain the Defendant's carjacking conviction.

### 2. Forgery

The Defendant contends that the evidence is insufficient to support a conviction for forgery. The Defendant provides no argument as to why the evidence is insufficient to sustain his forgery convictions. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Accordingly, the Defendant has waived this issue. Even had this issue not been waived, we conclude that it is without merit. The Defendant stated at trial "I am guilty of trying to pass a forged instrument." This evidence, along with the circumstantial evidence against the Defendant, is sufficient to support his conviction for forgery. This issue is without merit.

### B. Sentencing

The Defendant contends that the trial court erred when it sentenced him because it did not consider his military service as a mitigating factor. In the Defendant's reply brief, he asserts for the first time that the trial court improperly applied two enhancement factors, and the Defendant cited Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004) to support this contention. When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court

considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

When sentencing the Defendant, the trial court stated:

The Defendant is a Range 2 Offender. That is not in dispute. Consequently, he is looking on the carjacking case at a range of not less than 12[,] nor more than 20 years. On the forgery case, not less than two, nor more than four years.

Now a couple of preliminary matters addressing itself to the indictment.

Count 2 of the indictment merges with Count 1. That is the State pursued a theory of theft, which was the subject matter of the carjacking.

Counts 3, 4, and 5 are different theories of the same offense. And, consequently, they each merge into one count.

. . . .

[The Court] do[es] not find that any mitigating factors apply. . . . [The

-8-

Defendant's counsel] argues the Court should take into consideration that the Defendant is a veteran. That is admirable. . . . But in the Court's mind, before the Court applies the so-called catchall factor . . . you must show me something above and beyond what you would normally expect. . . . I have seen discussion in some of the cases that the defendant had a stable work history. Well, that is what you expect. I can see where there would be exemplary work histories. I can see where there would be exemplary completion of military service. . . . It is the exemplary participation in normal life expectancies that I feel that the mitigating factor – the catchall mitigating factor is reserved for, not just, Judge we feel the Defendant does [not have] a criminal history. Therefore, you should apply that as a mitigating factor. You expect people not to have a criminal history. . . . So, I have considered [the Defendant's counsel's] argument, but I reject it; because the proof in the record is that there was nothing exemplary about it.

The Court does find the Defendant has a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. . . . The Court notes that the Defendant has in his history, aside from those crimes necessary to establish the appropriate range, that he has crimes of violence.

As a matter of fact, when considering the weight to be applied to this enhancing factor, the Court places considerable weight upon the fact that the Defendant was on probation for a crime of violence at the time of the commission of this offense. The record reveals the Defendant was placed on probation in the General Sessions court for the offense of assault on 12-17-2002. This offense was committed on May 29, 2003. So it was committed while the Defendant was on probation. . . . That is a matter which the Court takes note of and places great weight on. In addition to that, the Defendant has a domestic violence, I think. . . . Yes, . . . two [other] assault cases in the year 2000.

. . . .

The Court also notes that the Defendant, as the State has also proven to the Court, . . . has a history of unwillingness to comply with offenses involving release in the community. . . . I know there was at least three occasions when the Defendant was on some form of release in the community and committed another or other offenses.

This Court also notes that efforts less restrictive than confinement have frequently been unsuccessfully applied to the Defendant.

. . . .

The Court will sentence the Defendant to a term in the State penitentiary of

18 years. 18 years on the carjacking and 4 years on the forgery, running concurrently one with the other.

## 1. Mitigating Factor

The Defendant first contends that the trial court erred when it refused to apply the Defendant's military service record as a mitigating factor. This mitigating factor is not among the statutorily defined mitigating factors set out in Tennessee Code Annotated section 40-35-113, rather, it is mitigating factor that has been recognized in other cases under a catchall subsection which includes "[a]ny other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113(13). This Court has previously stated, "With respect to [a defendant's] military service, honorable military service may always be considered as a mitigating factor consistent with the purposes of the 1989 Sentencing Act." State v. Vincent Gerrard Overton, No. 02C019510-CC00303, 1997 WL 287665, at *3 (Tenn. Crim. App., at Jackson, June 2, 1997), *perm. app. denied* (Tenn. Mar. 16, 1998). This Court has also, however, held that a trial court's refusal to mitigate a defendant's sentence based on past military service was not error. See State v. Charles W. Wellman, No. E2001-03055-CCA-R3-CD, 2003 WL 724432, at *11 (Tenn. Crim. App., at Knoxville, Mar. 4, 2003), *no perm. app. filed*. Accordingly, we find that the evidence does not preponderate against the trial court's refusal to mitigate the Defendant's sentence based on the Defendant's past military history. This issue is without merit.

## 2. Blakely v. Washington

In the Defendant's response brief, he argues for the first time that the trial court improperly applied two enhancement factors: that he had a history of criminal convictions; and that he had a history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(2), (9). The trial court determined, and both parties agree, that the Defendant is a Range II offender. Carjacking is a Class B felony, Tennessee Code Annotated section 39-13-404(b), and forgery is a Class E felony, Tennessee Code Annotated section 39-14-114(c). Because the Defendant is a Range II offender, he is subject to a potential sentence of twelve to twenty years for the carjacking and two to four years for the forgery. Tenn. Code Ann. § 40-35-112(b)(2), (5). The presumptive sentence for both convictions is the minimum sentence in the range. Tenn. Code Ann. § 40-35-210(e). The trial court sentenced the Defendant to eighteen years for the carjacking conviction and to four years for the forgery conviction, enhancing the sentence based upon the two aforementioned enhancement factors.

First, we note that the rule in Blakely, does not apply to enhancement factor (2), that the defendant has a history of criminal convictions. Blakely, 124 S. Ct. 2531, 2539. Further, the record fully supports the trial court's application of this factor. The rule in Blakely does apply to enhancement factor number (9), concerning the Defendant's prior unwillingness to comply with the terms or conditions of probation or release, and, therefore, the trial court's application of that factor is error under Blakely. We conclude, however, that the error in the trial court's application of enhancement factor (9) was harmless beyond a reasonable doubt. This Court has held that Blakely

violations are subject to a Constitutional harmless error analysis. <u>State v. Chester Wayne Walters</u>, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at \*19 (Tenn. Crim. App., at Nashville, Nov. 30, 2004). The record reflects that the Defendant in this case violated the terms or conditions of his release on at least two occasions, a fact in the Defendant's presentence report that the Defendant did not contest or deny. Therefore, we hold that the trial court's application of enhancement factor (9) was harmless error beyond a reasonable doubt. Therefore, we affirm the Defendant's sentence.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm all of the Defendant's convictions and sentences.

_____
ROBERT W. WEDEMEYER, JUDGE